O4NPINV

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          23 Cr. 346 (JPC)

5    SANDY CRAZAS-PINEZ,

6

7              Defendant.

8                                          Bail Violation Hearing
     ------------------------------x
9
                                           New York, N.Y.
10                                         April 15, 2024
                                           4:30 p.m.
11

12   Before:

13
                       HON. JOHN P. CRONAN,
14
                                           District Judge
15                          APPEARANCES

16   DAMIAN WILLIAMS
17        United States Attorney for the
          Southern District of New York
18   BY:  MITZI STEINER
          JACQUELINE KELLY
19        Assistant United States Attorneys

20   MARIO F. GALLUCCI
          Attorney for Defendant
21
     ALSO PRESENT:
22   Jonathan Lettieri, U.S. Pretrial Services

23

24

25

O4NPINV

1

2                    (Case called).

3              THE DEPUTY CLERK:  Can counsel, starting with the

4        government, please state your name for the record.

5              MS. STEINER:  Good afternoon, your Honor.  Mitzi

6        Steiner and Jacqueline Kelly, for the government.  We are

7        accompanied at counsel's table by pretrial services officer

8        Jonathan Lettieri.

9              THE COURT:  Good afternoon, Ms. Steiner, Ms. Kelly,

10       and Officer Lettieri.

11             MS. KELLY:  Good afternoon.

12             MR. GALLUCCI:  Good afternoon, Ms. Steiner, Ms. Kelly,

13       Pretrial Services, and your Honor.  Mario Gallucci, on behalf

14       of Ms. Pinez, who is standing to my right.

15             THE COURT:  Good afternoon, Mr. Gallucci and Ms.

16       Pinez.  I scheduled this conference after I unfortunately

17       received another troubling report from pretrial services about

18       Ms. Pinez.

19                  As the parties know, Ms. Pinez was released on a

20       number of conditions that Judge Lehrburger set on July 12,

21       2023.  These are stringent conditions, one of them being that

22       she was to be on home detention enforced by location monitoring

23       technology as directed by pretrial services.

24                  We had a bail review hearing on November 2.  I

25       conducted that after I learned that Ms. Pinez had reached out

O4NPINV

1    to a former student on his 18th birthday.  That prompted me to

2    revise conditions to prohibit contact with former students

3    unless in the presence of counsel.

4            I recall at that conference specifically advising Ms.

5    Pinez that noncompliance going forward would not be tolerated

6    and may result in her remand.

7            On April 5 I received a violation memo from pretrial

8    services that reported a number of violations that I want to

9    discuss more about today.

10           Let me summarize what the supposed violations are.

11           First, from July through November 2023 -- so this

12   would have been up to the last bail hearing -- GPS data

13   indicated that Ms. Pinez made various stops without permission

14   while she was out for other approved activities.  These were

15   stops to like a pharmacy or convenience stores, and those were

16   addressed by pretrial services with Ms. Pinez and her attorney.

17           Unfortunately, even after that November 2 there were

18   reports of further violations.  Pretrial services reports that,

19   while there was some improvement after that hearing, violations

20   have now continued and in fact escalated.

21           On January 22, 2024, GPS data revealed that Ms. Pinez

22   had an unauthorized stop at an elementary school on Staten

23   Island.

24           On March 3 she had authorization to pick up a paycheck

25   from work and cash it.  Instead of going to work, she went to a

O4NPINV

1    restaurant and a bar in Staten Island before going to a wooded

2    area.  She did go to a check cashing location, but she also

3    went to other places she was not supposed to go, and she

4    admitted to pretrial services, at least according to pretrial

5    services, that she used the reason of having to pick up and

6    cash a check as a pretense, and she wanted to leave the house

7    after a dispute at home.  So, in other words, she lied.  The

8    next day pretrial services told her this would be her final

9    warning before seeking action from me.

10             But more violations followed.

11             March 28, she stopped without permission at a mall in

12   Manhattan.

13             March 30 she went to home depot without receiving

14   permission.

15             And on April 3, while she had permission to go to a

16   Walmart, she went to an Applebee's on Staten Island for over an

17   hour before going to Walmart.  All of this was without pretrial

18   services' permission.  And I emphasize that this is according

19   to the report from pretrial services.

20             Having set that background, let me hear from the

21   parties.

22             Maybe I should start with the government.

23             At this point the government is seeking remand?

24             MS. STEINER:  That's correct, your Honor.

25             THE COURT:  Well, maybe since I think Mr. Gallucci has

O4NPINV

more convincing of me to do than you, Ms. Steiner, let me hear from Mr. Gallucci.

MR. GALLUCCI:  Your Honor, I recognize the seriousness of these violations.  I know we were in front of you once already, and at that point I think you were close to remanding Ms. Pinez if not for the government's input that didn't ask for remand.  So I want to give a global picture of what's happening here.

She's having issues living at home with her parents. As a result of that, has actually asked pretrial services if she can move out into her own apartment.  I believe that that, according to my client, was granted, that she was given permission to find an apartment to go to move out.  I don't know if she's found an apartment yet, but I know that they were working with her to move out of that environment that was causing these issues.

She on the 3rd was having a panic attack.  I actually have a letter that I received just now from Ms. Pinez, from her doctor, Dr. Burrell, who I actually do know from doing other cases with, that actually says that on the 28th that she has been having these panic attacks.  Dr. Burrell has listed all the phone calls and the therapy that she's been going through as a result of the difficulties she was having at home.

So I have that.  If the Court wants, I can make a copy.  I don't have a copy machine here, but I am sure we can

O4NPINV

1    get a copy to the government and to your Honor from

2    Dr. Burrell.

3           The day that she went to Home Depot, she did ask

4    permission to go to Home Depot.  She was going to Home Depot to

5    purchase items to put into the new apartment that she was going

6    to move into.

7           The day that she was at Applebee's is the day that she

8    was actually given permission to go to Walmart.  When she went

9    to Walmart, the items that she had purchased were large, so she

10   went to Home Depot to get a truck to transport the items from

11   Walmart.  When she was at Home Depot, they told her that a

12   truck would be available in about a half an hour, and she went

13   to Applebee's to wait.

14          Although I believe that these are very technical

15   violations, I know that the government is seeking remand, I

16   know pretrial services is seeking remand.  These are certainly

17   not to the level of the past violation, where they actually

18   involved speaking to children, which she's not supposed to be

19   doing because of the nature of this matter.  These all deal

20   with her own mental issues, which she is addressing through a

21   doctor.

22          All of the activities that are here she's

23   corroborating with this move that she's making.  She was in a

24   Home Depot.  She was waiting in Applebee's for a truck to

25   become available.  I don't see anywhere where pretrial services

O4NPINV

1    is making an argument that she is out at a bar and having

2    cocktails and partying.

3           It appears to me that she's just not following their

4    direction, which I have encouraged her to.  Pretrial services

5    reached out to me.  I did reach out to her.  I said she needs

6    to take this much more seriously because she's going to end up

7    being remanded.

8           I believe that once this move takes place that we are

9    going to be in a much better place.  If you want to put more

10   restrictions on her, like once she moves she cannot leave the

11   house without permission, I don't have a problem with that.

12          I know she has permission now to leave to go to work,

13   to go to church, and do whatever other activities that pretrial

14   services agrees with.  Maybe the answer that I'm asking for is,

15   you know, let's limit her a little more.  But to remand her on

16   these specific activities I think is a little too much.

17          THE COURT:  Let me hear from Officer Lettieri.

18          MR. LETTIERI:  Yes, your Honor.  Thank you.

19          As the government mentioned, pretrial services is also

20   seeking the defendant's remand.  The Court reviewed some of the

21   violations, so I don't want to go into too much detail, but in

22   pretrial services' view this is a very serious allegation, the

23   present offense, for which very strict conditions are needed to

24   reasonably assure the safety of the community.

25          She's subject to home detention, which requires all of

O4NPINV

1  her activities to be preapproved and for her to limit herself

2  to the locations that she's approved to go to so that the Court

3  and pretrial services can have confidence that the community is

4  kept safe while she is out on bail.

5         Unfortunately, over time it's become clear that she is

6  either unwilling or unable to comply with those strict

7  conditions.  And the Court warned her very specifically at the

8  last bail review hearing that if there is additional

9  noncompliance it's very likely that she would be remanded.

10  With that warning as well as pretrial services' regular

11  instructions and warning her of the potential consequences of

12  continued violations, trying to work through some of these

13  issues has been ineffective.

14         Pretrial services has notified her counsel, who I am

15  sure had discussions with her as well that were ineffective.

16  It's gotten to a point where it's become clear we simply don't

17  have confidence that she is going to comply with very strict

18  conditions, and that leaves the community at risk here.

19         Defense counsel wants to minimize some of this, and

20  maybe based off of some of her representations that can be

21  true, but pretrial services doesn't have confidence in some of

22  her representations.  At the end of the day, she's at locations

23  that are not approved in advance, in situations, at an

24  Applebee's or a bar or a mall or a school, where she is very

25  likely to be in contact with minors.  This is a risk that

O4NPINV

1    pretrial services is not willing to continue to accept if she

2    is not going to take seriously the instructions from the Court

3    or our office.

4            I mean, it's unfortunate, but at this point, it's the

5    position of our office that she should be remanded at this

6    time.

7            THE COURT:  Are you familiar at all with the living

8    situation and her efforts to try to find a different residence?

9            MR. LETTIERI:  Yes, your Honor.  After that incident

10   on March 3 I think it was that the Court mentioned when she did

11   after the fact reveal that there had been some issues at home,

12   she was encouraged to relocate.  She later on found a new

13   apartment and I believe may have already signed a lease there

14   and is planning to move in the next week or so to that

15   location.

16           THE COURT:  Okay.

17           Ms. Steiner, let me hear more from the government on

18   your application.

19           MS. STEINER:  Thank you, your Honor.  I won't repeat

20   what's already been said.  As your Honor has noted, this is a

21   presumption case.  The government originally was amenable to a

22   very strict bail package in light of the mental health concerns

23   that had been proffered by the defense.  But it's become very

24   clear to the government that the defendant is unwilling or

25   unable, as pretrial services has indicated, to abide by those

O4NPINV

1   very strict conditions and in so doing poses a clear risk to

2   the community.

3          As pretrial services has noted, the locations where

4   the defendant has decided to go, including bars and restaurants

5   and even an elementary school, are locations where minors are

6   present.  As the Court is aware, some of the criminal conduct

7   or alleged criminal conduct in this case took place in such

8   locations, such as a parking lot, where the defendant is

9   alleged to have engaged in sex with a minor in her own vehicle.

10         So the risk to the community here is significant.

11  Pretrial services is correct, the Court could not have been

12  clearer with the defendant at the last conference that

13  additional violations would not be tolerated.  Despite that

14  warning, the defendant's conduct has only, as your Honor noted,

15  escalated in terms of its violations and in terms of, from the

16  government's perspective, the risk that the defendant now poses

17  to the community.

18         I would just note, your Honor, that in terms of the

19  new living arrangement that has been proposed for the

20  defendant, certainly the government does not have any more

21  comfort having the defendant living on her own without the

22  somewhat, you know, even if loose, supervision of family

23  members where potentially she will be even more difficult to

24  supervise.

25         So I think at this point, your Honor, the defendant

O4NPINV

1    has proven that she is not amenable to supervision, that she is

2    putting herself in the locations where she could be a clear

3    risk to the community, and on that basis, in light of this

4    record, remand would be appropriate at this time.

5         THE COURT:  Mr. Gallucci, is there anything further

6    that you wish to add?

7         MR. GALLUCCI:  Your Honor, I just want you to, I'm

8    sure you did, but take notice of when we were last here on

9    November 2, it's about four months before these violations

10   occurred, they all coincide with her going through this issue

11   at home where she's been given permission to now move.

12        She just informed me that she was supposed to move

13   into that apartment last week, but as a result of this hearing

14   today, she felt that it was, you know, she would probably be

15   better off seeing what happened at the hearing than actually

16   going through with the move.

17        As far as the elementary school is concerned, it was

18   P.S. 23.  She was with her father.  Her father had to pick up

19   her niece.  She never left the car.

20        Although I understand the government and pretrial

21   services' concerns, all of these issues coincide with the move.

22   they all kind of mirror what Dr. Burrell is basically saying,

23   that she's got, you know, she's having these panic attacks.

24   She's anxious.  I believe that remand is going a little too

25   far.

O4NPINV

1          If you want to put more restrictions on her, she

2     sought the help from pretrial services to get out of a bad

3     situation.  They agreed with her.  They encouraged her to

4     leave, and she left.  She found a place to go.  She's going

5     there.

6          I understand the concern.  I certainly don't believe

7     that this is the same concerns that we had on November 2.  I

8     think that remand is just going too far.

9          THE COURT:  I want everyone to give me a few moments

10    to go back to the robing room to gather my thoughts.  I'll

11    return shortly.

12          (Recess)

13          THE COURT:  Everyone may be seated.

14          Ms. Pinez is currently on bail with very strict

15    conditions.  Those conditions, which the parties agreed to,

16    were put in place largely given the very serious nature of Ms.

17    Pinez' alleged conduct and the danger that that conduct posed

18    to others, in particular to minors.

19          Ms. Pinez has repeatedly violated those conditions.

20    The question before me now is whether there are any conditions

21    or combination of conditions -- whether current ones or new

22    ones to be imposed -- that will reasonably assure the safety of

23    any person other than the defendant and of the community.  I

24    note that my primary focus here is the danger to the community

25    part of the analysis, not the risk of flight.

O4NPINV

1          Under the Bail Reform Act, I must impose the least

2     restrictive condition or combination of conditions that would

3     reasonably assure the safety of any other person and the

4     community.

5          This analysis considers factors that include the

6     nature and circumstances of the offense, the weight of the

7     evidence against the defendant, the history and characteristics

8     of the defendant, and the nature and seriousness of the danger

9     to any person or the community that will be posed by the

10    defendant's release.

11         In addition, Section 3142(e)(3) provides for a

12    rebuttable presumption when a judicial officer finds there to

13    be probable cause that the defendant committed certain charged

14    offenses.  This includes most of the offenses charged in the

15    indictment.  Count One charges enticement a minor victim to

16    engage in illegal sexual activity.  In violation of Title 18

17    United States Code Section 2442(b); and Count Two charges

18    production of child pornography, in violation of Title 18

19    United States Code Sections 2251(a) and 2.

20         Under Section 3142(e)(3), subject to rebuttal, it

21    shall be presumed that no condition or combination of

22    conditions will reasonably assure the appearance of the person

23    as required and the safety of the community.  While Ms. Pinez

24    is innocent unless and until proven guilty, and she remains

25    presumed innocent until the government proves her guilt beyond

O4NPINV

a reasonable doubt before a jury or until she pleads guilty, I
do find that there is probable cause that she committed the
offenses charged in the indictment in light of the grand jury's
finding of probable cause reflected in returning that
indictment.  So the presumption under Section 3142(e)(3) is
triggered.

As I mentioned, the danger to the community here is to
minor victims.  The conduct as alleged is that Ms. Pinez
induced a minor who was a student at the high school where she
taught to engage in sexual relationship with her and to create
and transmit sexually explicit depictions of him to her.

The indictment alleges that, despite being at the
school, Ms. Pinez would have the student obtain day passes to
leave the campus and that they would engage in sexual relations
in her car while parked elsewhere.

Now, as I mentioned, after her presentment, Judge
Lehrburger released Ms. Pinez on very strict bail conditions
that included, probably most importantly here, home detention
enforced by electronic monitoring.  It is clear to me that
those conditions, as strict as they are, have not adequately
addressed the danger to the community on account of Ms. Pinez'
repeated noncompliance.

As I addressed at the bail review hearing on November
2, 2023, and I say this as background to where we are today,
there was an instance where Ms. Pinez had contact with a former

O4NPINV

1    student that resulted in a modification to her conditions.

2            Since then, Ms. Pinez has continued, or has gone to

3    locations without the authorization of pretrial services.  This

4    happened a number of times in 2024.

5            The first was on January 22, 2024, she was at an

6    elementary school in Staten Island.  I note that that violation

7    may sound worse than it actually was.  I will credit the

8    explanation that Ms. Pinez was with her father to pick up her

9    niece, I believe, but even putting that instance aside, which I

10   will for purposes of today, the violations continued.

11           Ms. Pinez lied to pretrial services about picking he

12   up a check from her workplace.  Instead, she went to a

13   restaurant and bar in Staten Island before spending some time

14   apparently parked in a wooded area.  I note as, I mentioned

15   earlier, the conduct in this case does involve activities while

16   she was parked in a car.  There is no indication that similar

17   activities occurred here, but this reflects why the importance

18   of full compliance with home detention was put in place.

19           There are other violations:  Going to a mall without

20   permission, going to Walmart, but then spending over an hour at

21   an Applebee's.  Again, I understand the explanation given.

22   That still does not excuse the violation of the conditions of

23   her release.

24           There was the instance of seeking permission to go to

25   a Home Depot, but going anyway before getting authorization

O4NPINV

1    present pretrial services.

2          The strict conditions of Ms. Pinez' bail were put in

3    place for a reason:  To keep the community safe.  They were put

4    in place because of the very serious nature of the allegations

5    and the very real concern of harm to victims.  If the

6    conditions cannot have the effect of actually enforcing her

7    home confinement, they are not effective in reasonably assuring

8    the safety of the community.

9          At the bail review hearing on November 2 I explained

10   that if there were a request for detention previously before

11   me, I very well may have granted it, given the nature of the

12   allegations in this case and the standards that I must apply.

13         I also made very clear that further violations would

14   not be tolerated.  I told Ms. Pinez, "If there are violations,

15   the outcome very well be that I will not allow you to continue

16   to be released on bail."

17         If I were looking today at a one-time occurrence of a

18   violation it, might be different.  But Ms. Pinez has made clear

19   that she is not willing to abide by the conditions that have

20   been imposed.

21         I therefore conclude that no condition or combination

22   of conditions of release can reasonably assure the safety of

23   the community.  I find that the government has shown by clear

24   and convincing evidence that no such conditions can reasonably

25   assure the safety of the community.

O4NPINV

1          In reaching that conclusion I have considered the less

2     restrictive alternates to detention, including any enhancement

3     to the already very stringent bail conditions.  To that end the

4     possibility of Ms. Pinez living on her own instead of her with

5     her family most certainly does not give me any more comfort

6     that she will abide by the conditions of her release for the

7     reasons Ms. Steiner mentioned earlier.

8          I therefore find that the government has met its

9     burden.  I order that the bail be revoked and the defendant be

10    remanded pending trial.  I will issue an order of remand to the

11    Marshals Service within the next few moments.

12          The next conference in this case is scheduled for, I

13    believe, May 13.  Should we hold that conference day, or should

14    there be an adjustment in light of today?

15          MR. GALLUCCI:  Your Honor, I did speak to the

16    government this afternoon.  Starting tomorrow I'm doing

17    pretrial hearings on a murder case in Ocean County, New Jersey.

18    That case is beginning jury selection on Tuesday of next week,

19    with the pretrial hearing starting tomorrow.

20          They sent out over 900 juror notices because of the

21    notoriety surrounding that case and the media attention that it

22    received.  The judge is instructing that jury that we should be

23    on trial, including jury selection, seven weeks.  I cannot make

24    a request to you or the government yet because we're still in

25    the infancy of that, and I didn't know where we would be by May

O4NPINV

1    13.

2            With that being said, I did also speak to the

3    government today about an update on the mitigation report.

4    It's almost complete, the last part of the report that needed

5    to be done.  It was scheduled for this Friday.  It was an

6    interview by the mitigation specialist of Ms. Pinez and a

7    conversation with her current treating physician.  I should

8    probably have the report within the next, within two weeks of

9    that.

10            THE COURT:  Okay.

11            MR. GALLUCCI:  I am assuming that this is going to

12    delay that a little bit because they're probably going to have

13    to make some arrangements to visit or set up a videoconference

14    with Ms. Pinez.

15            THE COURT:  Sure.

16            MR. GALLUCCI:  So I don't know if you want to keep

17    that May 13 date now.

18            I also want to be heard on the remand if I can.  I am

19    going ask your Honor if you could indicate on the order that

20    she receive psychiatric and medical attention and that she also

21    be placed on suicide watch.

22            THE COURT:  Are you requesting that in the order that

23    I sign for remand or a separate order to the Bureau of Prisons?

24            MR. GALLUCCI:  A separate order, Judge.

25            THE COURT:  I assume there's no objection to that

O4NPINV

1    request.

2                 MS. STEINER:  No, your Honor.

3                 THE COURT:  So today is April 15.  May 13 is less than

4    a month away.

5                 I think I am familiar with the case that you are

6    alluding to in New Jersey.  It seems that it might be difficult

7    for you to make a May 13 court appearance.  I'm happy to keep

8    it, but if it would make more sense to move that, we could do

9    that as well.

10                MR. GALLUCCI:  It probably would make more sense to

11   move it, so I don't have to jump through hoops when I'm looking

12   at it getting closer.

13                THE COURT:  Ms. Steiner and Ms. Kelly, what is the

14   government's view on whether we should keep that date or move

15   it a little bit?

16                MS. STEINER:  Your Honor, the government of course is

17   interested in moving the case along as quickly as possible --

18                THE COURT:  Sure.

19                MS. STEINER:  -- in light of how long it's been

20   pending.

21                Assuming the government does receive a mitigation

22   submission prior to the May 13 date and is able to start

23   reviewing, we would not have any objection to postponing or

24   adjourning that date by a few weeks.  But I just want to note

25   for the record that that would be government's expectation if

O4NPINV

1      the Court would be inclined to have a different date.

2                  THE COURT:  I trust you will do everything you can to

3      get the mitigation report as quickly as possible to the

4      government.

5                  MR. GALLUCCI:  Yes, your Honor.  I don't find that to

6      be an unreasonable request.

7                  THE COURT:  Would three weeks, to June 3, be not

8      enough time?  Do you think it should be a little bit longer

9      than that?

10                 MR. GALLUCCI:  The expectation is that the jury gets

11     the case by June 7.

12                 THE COURT:  June 7.  Okay.

13                 MR. GALLUCCI:  If you want to move it to that

14     following week, just to be safe, and I could keep the Court and

15     the government informed on the progress of that matter if you

16     want it to be earlier.

17                 THE COURT:  Would June 13 at 9:30 work for the

18     parties?  That's a Thursday.

19                 MR. GALLUCCI:  Judge, I have a matter in front of

20     Judge Block.  Let me just see what time that's at.  That's a

21     10-defendant case.  That is at 1:30.  Yes, I could do a 9:30.

22                 THE COURT:  Why don't we do June 13, that is a

23     Thursday, at 9:30.

24                 Ms. Steiner and Ms. Kelly, does that work for the

25     government?

O4NPINV

1          MS. STEINER:  Yes, your Honor.

2          MR. GALLUCCI:  I'm sorry to interrupt everybody.

3    Could we do it later in the morning so I could stay in

4    Manhattan and run over the bridge to the Eastern District?

5          THE COURT:  We can do it at lunchtime.  The reason I

6    suggested 9:30 is I'm currently scheduled to be on trial that

7    week.  I could do a Court appearance at lunch, potentially at

8    1:00.

9          MR. GALLUCCI:  That would work out perfect.

10          THE COURT:  Is that okay?

11          MS. STEINER:  Either would work for the government.

12          THE COURT:  Okay.  Why don't we do 1:00 then on June

13    13.

14          MS. STEINER:  Thank you, Judge.

15          THE COURT:  Mr. Gallucci, I will work on a medical

16    order to the MDC.  I do think it makes sense to advise Ms.

17    Pinez, as noted here on this form, that to facilitate -- and to

18    you -- to facilitate any needed medical attention, the

19    defendant should provide to the MDC health care staff as soon

20    as practical all pertinent medical records associated with her

21    specific condition.  And I will reference above psychiatric

22    attention.  Is there other specific medical attention that you

23    would like me to note?

24          MR. GALLUCCI:  No, your Honor.  Just suicide watch

25    we're most interested in.

O4NPINV

1          THE COURT:  Yes.

2          MR. GALLUCCI:  I have -- I'm sorry to interrupt.

3          THE COURT:  I was going to say to the extent there are

4    any records or diagnoses for identified health care providers,

5    they should be e-mailed to an address, which Ms. Hendricks can

6    get you as well, bro-medicalattention-s@bop.gov or provided by

7    mail to the MDC with the defendant's information.  If you have

8    any of those records, that will help the process.

9          MR. GALLUCCI:  Judge, I have her doctor's cell phone.

10   I will contact the doctor as soon as I left here.

11         THE COURT:  There also may be a HIPAA form that you

12   might have to fill out for the prison.  The jail should be able

13   to help you do that.

14         Ms. Steiner.

15         MS. STEINER:  Your Honor, I was just going to offer

16   that the government would be happy to make a connection with

17   legal counsel at the MDC if the defense wants that assistance

18   in providing the medical records more directly.

19         THE COURT:  I appreciate that.  Thank you.

20         MR. GALLUCCI:  Thank you.

21         THE COURT:  Okay.  Thank you all.

22         Maybe I should also ask -- yes, is there an

23   application?

24         MS. STEINER:  Yes, your Honor.  Thank you.

25         The government would make an application to exclude

O4NPINV

1   time from May 13, the prior next conference date, until June

2   13, the date on which the conference has been rescheduled, in

3   the interest of justice to allow the defense to continue to

4   prepare a mitigation submission, to provide that submission to

5   the government, for the government to begin its review in this

6   case, and to begin the discussions about potential dispositions

7   in this matter.

8           MR. GALLUCCI:  Your Honor, in light of the fact that

9   the mitigation specialist is continuing to work on that, I have

10  no objection to that request.

11          THE COURT:  So I will exclude time from today until

12  June 13, 2024, pursuant to Speedy Trial Act, 18 U.S. Code,

13  Section 3161(h)(7)(A).  I find the ends of justice served by

14  that exclusion outweigh the interests of the public and the

15  defendant in a speedy trial.  Those are for the reasons

16  Ms. Steiner mentioned, to allow the defense to complete its

17  preparation of the mitigation report, to allow the government

18  to review and consider that submission, and also for the

19  parties to discuss any disposition of that matter.

20          MR. GALLUCCI:  Thank you, your Honor.

21          THE COURT:  Thank you.  I hope everyone stays well.

22          MS. STEINER:  Thank you, your Honor.

23          (Adjourned)

24

25