

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 28, 2025

**BY ECF**

The Honorable John P. Cronan
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

      Re:    *United States v. Carazas-Pinez*, 23 Cr. 346 (JPC)

Dear Judge Cronan:

      The Government respectfully submits this letter in advance of the sentencing of defendant Sandy Carazas-Pinez ("Pinez" or "the defendant"), which is currently scheduled for August 4, 2025. For the reasons stated below, the Government respectfully submits that a sentence within the Stipulated Guidelines Range is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing in light of the seriousness of the defendant's conduct, the need for specific deterrence, and the need to protect the community from further crimes of the defendant.

**I.    Background**

    **A.  Offense Conduct**

      From approximately December 2021 until February 2023, Pinez was a teacher at School-1. (PSR ¶ 13). School-1 is a New York State Education Department accredited, year-round special education school located in Yonkers, which provides educational and therapeutic support to students. (*Id.*). Certain students enrolled at School-1 reside on campus. (*Id.*). During the relevant time period, Minor Victim-1 was a 16-year-old boy ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Id.* ¶ 14). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Id.*).

      Pinez, who is currently 35 years old, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Id.*). Beginning in or around December 2022 and continuing through in or around February 2023, Pinez developed a sexual relationship with Minor Victim-1. (*Id.*). Among other things, Pinez solicited visual depictions of sex acts from Minor Victim-1, including FaceTime calls with Minor Victim-1 during which he would masturbate. (*Id.* ¶ 15). Pinez also engaged in sexual intercourse and other sex acts with Minor Victim-1 on numerous occasions near the School-1 premises and, on one occasion, near Minor Victim-1's mother's residence ▇▇▇▇▇▇▇▇. (*Id.*). Pinez also utilized coercion and threats to maintain her sexual relationship with Minor Victim-1, as described below. (*Id.*)

Minor Victim-1 began communicating with Pinez by text message in or around November 2022. (*Id.* ¶ 16). Minor Victim-1 initially indicated a romantic interest in Pinez, but Pinez stated that "it is super illegal" and joked that Minor Victim-1 was "[t]rying to get [her] in jail." (*Id.*). However, their communications quickly became increasingly sexual in nature, with Pinez asking Minor Victim-1 to describe his sex life, the size of his penis, and whether he was a virgin, among other things. (*Id.*) Pinez also began sending Minor Victim-1 sexually explicit images of herself. (*Id.* ¶ 17). On several occasions, Pinez also asked Minor Victim-1 to send her sexually explicit images of himself and to masturbate during video calls with her. (*Id.* ¶ 18).

At School-1, Pinez would request that Minor Victim-1 engage in physical contact with her during class on almost a daily basis, including having Minor Victim-1 touch her thigh and genitals over her clothing. (*Id.* ¶ 19). Pinez similarly touched Minor Victim-1's thigh and genitals over his clothing. (*Id.*). Video surveillance footage from Pinez's classroom frequently reflects Pinez and Minor Victim-1 in inappropriately close contact. (*Id.*). Pinez informed Minor Victim-1 that the video surveillance footage prevented her from engaging in more sexually explicit conduct while in class. (*Id.*). For example, on January 4, 2023, Pinez texted Minor Victim-1: "Ok I wanted to kiss them lips lol" and "Sucks our classroom camera works lol." (*Id.*).

Pinez began asking Minor Victim-1 to meet with her outside the campus of School-1 to engage in sexual activity. (*Id.* ¶ 20). To do so, Pinez instructed Minor Victim-1 to obtain a day pass up to twice a week—which permits a student to leave School-1's campus—for the purpose of engaging in sexual intercourse with Minor Victim-1 off campus. (*Id.*). After Minor Victim-1 obtained a day pass at Pinez's direction, Minor Victim-1 would meet Pinez at a coffee shop located near School-1, where Pinez would pick him up in her car. (*Id.* ¶ 21). Pinez would then drive Minor Victim-1 to another location, such as a nearby park or gas station, where she would engage in sexual intercourse with Minor Victim-1 in the backseat of her vehicle. (*Id.*). Pinez would also instruct Minor Victim-1 to perform oral sex on her and/or perform oral sex on Minor Victim-1. (*Id.*).

Pinez utilized threats and coercion to induce Minor Victim-1 to engage in a sexual relationship with her, even after he voiced his opposition. (*Id.* ¶ 25). When Minor Victim-1 indicated that he no longer wished to engage in a sexual relationship, Pinez threatened self-harm and indicated that she was in an abusive marital relationship. (*Id.*). In addition, on occasions when Minor Victim-1 refused to have sex with her, Pinez would, among other things, threaten to give him low marks on his assignments and/or prevent him from attending gym, or engaging in other school activities that he enjoyed. (*Id.*). Pinez further informed Minor Victim-1 that her brother was a detective ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌, and that she would therefore be immune from any consequences for her illegal actions. (*Id.*). On a number of occasions, Pinez also instructed Minor Victim-1 to delete their text message communications—including nude images she sent of herself to Minor Victim-1—for the apparent purpose of covering up her illegal conduct. (*Id.* ¶¶ 28-29).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Pinez also acknowledged in communications with Minor Victim-1 that "most of the time you say we should stop," but, nevertheless, continued to induce him to engage in sex acts with her. (*Id.*)

In February 2023, employees at School-1 noticed that Pinez was engaging in inappropriate behavior with Minor Victim-1. When she was confronted by staff, Pinez attempted to cover up her crimes by providing excuses for her close contact with Minor Victim-1. (*Id.* ¶¶ 30-31). Pinez also directed Minor Victim-1 to please "back me up with this, if they ask," in an apparent effort to encourage Minor Victim-1 to conceal her crimes. (*Id.* ¶ 30). Pinez was subsequently terminated. In March 2023, a couple of days after her termination, Pinez contacted Minor Victim-1 from a new phone number and informed Minor Victim-1 that "I can't talk to you, I just wanted to make sure you are ok" and told him to "delete these messages please." (*Id.* ¶ 32). When Minor Victim-1 asked Pinez "[d]o I have to delete the nudes to," Pinez ceased responding. (*Id.*). Shortly thereafter, Minor Victim-1 placed a recorded call to Pinez. (*Id.* ¶ 33). Pinez informed Minor Victim-1 that she had been terminated. When Minor Victim-1 asked Pinez if she was terminated because they were observed having sex, or merely being together in her vehicle, Pinez did not deny the sexual contact and informed Minor Victim-1 that they had only been observed entering her vehicle. (*Id.*).

### B. Procedural History & Sentencing Guidelines

On July 11, 2023, a grand jury returned an indictment charging Pinez with one count of child enticement, in violation of 18 U.S.C. § 2422(b) (Count One), and one count of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2 (Count Two). On December 16, 2024, Pinez pleaded guilty to Count One of the Indictment pursuant to a plea agreement (the "Plea Agreement"). (*Id.* ¶ 6).

The Plea Agreement calculated the defendant's Guidelines Range as follows: Pursuant to § 2G2.1(a), the base offense level is 32. Pursuant to § 2G1.3(b)(2)(A), an increase of two levels applies because the offense involved the commission of a sex act or sexual contact. Pursuant to § 2G1.3(b)(5), an increase of two levels applies because Minor Victim-1 was otherwise in the custody, care, or supervisory control of the defendant. Pursuant to § 2G1.3(b)(6)(B), an increase of two levels applies because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct. Pursuant to § 4B1.5(b)(1), an increase of five levels applies because the defendant's instant offense of conviction is a covered sex crime, and the defendant engaged in a pattern of activity involving prohibited sexual conduct. Assuming the defendant clearly demonstrates acceptance of responsibility, a three-level reduction will be warranted at sentencing. The defendant has zero criminal history points, resulting in a Criminal History Category of I. With an offense level of 40 and a Criminal History Category of I, the stipulated Guidelines range (the "Stipulated Guidelines Range") is 292 to 365 months' imprisonment, with a mandatory minimum term of 120 months' imprisonment. (*Id.* ¶ 6(c)(i)).

The U.S. Probation Office ("Probation") calculated the Guidelines range slightly differently than as laid out in the Plea Agreement. Probation finds that pursuant to § 3A1.1(b)(1), an increase of two levels should also apply because the defendant knew, or should have known, that Minor Victim-1 was a vulnerable victim based on his enrollment at School-1, ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.[1] (*Id.* ¶ 46). As such, Probation calculates an offense level of 42 that, with a Criminal History Category of I, results in a Guidelines range of 360 months to life imprisonment, with a mandatory minimum term of 120 months' imprisonment. (*Id.* ¶¶ 113-14). Probation recommends a sentence of 180 months' imprisonment.

## II. Discussion

### A. Applicable Law

As the Court is well aware, the Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant;

---

[1] The Government does not contest that there is a factual basis for the application of a vulnerable victim enhancement as applied by Probation, pursuant to § 3A1.1(b)(1).

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

## B. The Court Should Impose A Sentence Within the Stipulated Guidelines Range

The Government respectfully submits that the application of the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a), supports the imposition of a sentence within the Stipulated Guidelines Range, in light of the seriousness of the offense, the need for specific deterrence, and the need to protect the community from further crimes of the defendant.

*First*, the defendant committed a very serious and predatory offense. From at least November 2022 through February 2023, the defendant enticed Minor Victim-1—who was then her high school student—to engage in a sexual relationship with her. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Indeed, the defendant brazenly abused her position of authority and her responsibility of care for her students by sexually exploiting Minor Victim-1 on multiple occasions in the vicinity of School-1 and, on one occasion, near his mother's residence. In addition to enticing Minor Victim-1 to engage in repeated sexual encounters, the defendant sought nude images from Minor Victim-1 and requested that he engage in live-stream videos in which he masturbated for her own gratification. When Minor Victim-1 protested, the defendant ensured that Minor Victim-1 would continue to do her sexual bidding by emotionally manipulating him by telling him that she was in an abusive relationship and threatening to harm herself, and by threatening to deny him from engaging in school activities or to give him low marks. The defendant's criminal conduct was an extreme perversion of her position of power and authority and is deserving of a significant sentence of incarceration.

*Second*, there is a critical need for specific deterrence in this case. The defendant was clearly aware of the criminal nature of her conduct but persisted in it anyway. Indeed, at the start of her communications with Minor Victim-1, the defendant even informed Minor Vicitm-1 that what they were doing was "super illegal" and stated that Minor Victim-1 was "[t]rying to get [her] in jail." The defendant also repeatedly attempted to cover up her crimes. The defendant threatened Minor Victim-1 that she would use her connections to law enforcement—namely, the fact that her brother was a detective ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—to silence Minor Victim-1 and to ensure that she did not face any consequences for her illegal actions. The defendant also repeatedly directed Minor Victim-1 to delete all of their communications in order to evade detection for her illegal conduct. When confronted by other staff, the defendant also lied to her colleagues and—worse of all—enlisted Minor Victim-1 to lie on her behalf. Even after she was terminated, the defendant continued to affirmatively contact Minor Victim-1 and instructed him to delete their messages to cover up her continued contact with him. The defendant clearly was not deterred by the threat of criminal sanction and viewed herself as being above the law. Accordingly, a substantial sentence of imprisonment is needed to deter the defendant from resuming her predatory behavior.

*Third*, a significant sentence of incarceration is necessary to protect the public. As described above, the defendant's criminal conduct was brazen and she is not amenable to supervision. The defendant preyed upon Minor Victim-1 in her own classroom, even while she was aware that surveillance cameras were monitoring her conduct. Moreover, after her arrest, the defendant flouted the terms of her pretrial release, including by reaching out to Individual-1, a former student, on his eighteenth birthday, all while being aware that her supervision conditions prohibited her from contacting minors. The defendant then deleted her email correspondence with Individual-1, in an apparent effort to conceal her conduct, but not before they were captured by Pretrial Services' computer monitoring software. Even after a bail hearing in November 2023, the defendant continued to have numerous compliance issues with her location monitoring, including stopping at unapproved locations while out for other approved activities and requesting same-day activities, which ultimately resulted in her bail revocation in April 2024.

Further, the defendant's sexual behavior continues to pose a risk to the public.  the defendant's noncompliance on pretrial raises serious concerns that she will continue to engage in similar conduct absent a significant period of incarceration, as even strict supervision has proven incapable of preventing and fully monitoring her conduct. Thus, as Probation notes, the defendant's ▮▮▮ noncompliance on pretrial supervision "underscores the need to incapacitate [her] to protect the public from further crimes of the defendant."

Defense counsel and Probation cite to several mitigating factors with respect to this defendant. This is the defendant's first conviction. ▮▮▮ Nevertheless, the Court must balance these considerations against the seriousness of the offense, the need for specific deterrence, and the need to protect the public. A sentence within the Stipulated Guidelines Range is appropriate in light of the totality of the Section 3553(a) factors.

### III.  Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence within the Stipulated Guidelines Range is sufficient but not greater than necessary to achieve the purposes of sentencing and would be fair and appropriate in this case.

Page 7

        Respectfully submitted,

        JAY CLAYTON
        United States Attorney

By:   /s 
        Mitzi Steiner
        Assistant United States Attorney
        (212) 637-2284

Cc: All Counsel of Record (by ECF)